MR. JUSTICE SHEEHY,
dissenting:
The recent penchant of this Court to approve summary judgments from the District Court where genuine issues of material fact exist is shown again in this case. There are two genuine issues of material fact presented here: (1) whether an emergency existed requiring, as a good Samaritan, the assistance of Dr. Batson; and (2) if the answer to the first query is affirmative, whether Batson was guiltv of gross *300 negligence; and if the answer is no to the first query, whether he was guilty of ordinary negligence.
We said in Kronen v. Richter (Mont. 1984), [211 Mont. 208,] 683 P.2d 1315:
“Summary judgment is never to be used as a substitute for trial if a factual controversy exists (citing a case). Summary judgment is only proper if the pleadings, depositions, answers to interrogatories and admissions on file show that there is no genuine issue of material fact (citing a case) . . .”
683 P.2d at 1317.
In granting a motion for summary judgment, the discretion of the District Court, and of this Court in reviewing documents is limited.
“A discussion of discretion divides into two parts: Discretion in granting and in denying a motion for summary judgment. As we shall see, the Court cannot draw upon any discretionary power to grant summary judgment; the Court may however exercise its sound discretion in denying a motion of summary judgment although on the record the movant has made out a case therefor.”
6 Moore’s Federal Practice (Part II), page 56-601, paragraph 56.15[6] (1987).
The plaintiff has lost this appeal because the facts are not appealing. The District Court expressed the problem:
“The court would admit to some problems of keeping an impartial perspective in this case, but is satisfied, when all is said and done, that this is a fair decision based on thorough research, sufficient facts, and clear rules of law. Nonetheless, the court cannot help but wonder where our society is taking itself by bringing cases like this to the courtroom. We may be well on our way to making an endangered species out of good Samaritans who are forced to stifle their good impulses out of fear of being taken to court. If this is the trend, it is indeed unfortunate.”
The other side of that coin is that if Karen McCain has sustained serious and permanent damages to her leg because Dr. Batson, instead of rendering aid sufficient for the moment, in effect, “over-treated” her, she is entitled to have her case heard in court, even though Dr. Batson acted from the best of impulses.
The first issue here was whether an emergency existed at the time of Dr. Batson’s treatment. The District Court balanced those issues of fact and decided that an emergency existed. In doing so, it determined a question of fact, an improper procedure where summary judgment is concerned.
*301 First, the District Court ticked off the facts which contended for no emergency: There was no major blood loss; her life was not in danger and she was not going to die; she would not lose the limb; the leg had a numb sensation and there was an absence of pain immediately following the injury; and she was neurologically intact. Opposing that, said the court, was that the witnesses agreed the cut was extremely serious, possibly bone deep; there was no hospital in town; the Ashton hospital had no anesthesia facilities; there was no available ambulance; no police officer or other friends to provide transportation to a hospital; and reason to believe the “limb was at risk.” Not mentioned by the District Court was the testimony of Dr. Grindley that a simple dressing would suffice under the circumstances, and that suturing the wound presented a case of final repair.
Since there existed a genuine issue of material fact, one that should have been decided by a trier of fact, such as a jury, the issue should not have been decided on summary judgment.
The second issue of fact was whether the attendance by the doctor in this case constituted either ordinary or gross negligence. The majority, without defining gross negligence in this instance, has determined that there was no gross negligence on the part of the defendant doctor. None of the witnesses defined what was meant by gross negligence. The only definition on which this Court relies is the following:
“Q. Well, in your opinion, if this was a temporary suturing job by Dr. Batson, did that, in your opinion, constitute gross negligence, gross malpractice?
“A. Well, you see you really haven’t told me what gross malpractice is yet or gross negligence.
“Q. Well, it’s a heck of a lot worse than ordinary malpractice.”
If any District Court in Montana had given a jury an instruction that so defined gross negligence, we would in high dudgeon reject it as inadequate. Here, the majority, without otherwise defining gross negligence as it applies under the Good Samaritan statute, undertakes no other definition to resolve the fact issue of gross negligence.
We might entertain in ourselves a serious doubt that the plaintiff would prevail if she had been permitted to take her case to a jury to resolve the fact issues. Our personal feelings about the propriety of a case have no place in deciding questions on summary judgment. If issues of fact exist, as Professor Moore notes, supra, there is no dis *302 cretion, in our Court or in the District Court, to grant summary judgment.
I would reverse and remand for further proceedings.